UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS QUIROZ, on behalf of himself and all similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CERES,<br><br>Defendant. | No. 1:17-cv-00444-DAD-BAM<br><br>ORDER APPROVING SETTLEMENT AGREEMENT AND DISMISSING CASE<br><br>(Doc. No. 80) |

This matter is before the court on the joint motion for approval of the settlement agreement. (Doc. No. 80.) On February 5, 2019, that motion came before the court for hearing. Attorneys Ian Sangster and David Mastagni appeared telephonically on behalf of plaintiff Carlos Quiroz, individually and on behalf of all others similarly situated. Attorney Jesse Maddox appeared telephonically on behalf of defendant City of Ceres. Having considered the briefing, and having heard from counsel, the court will grant the joint motion to approve the settlement agreement.

**BACKGROUND**

On February 17, 2017, plaintiff commenced this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, based on defendant's use of an illegal compensation computation method which under-calculated plaintiff's regular rate of pay and

resulted in underpayment with respect to overtime hours. (Doc. No. 1 ("Compl.") at ¶ 4.) In his complaint, plaintiff alleges that he and the collective members were denied proper compensation in violation of the FLSA when defendant failed to include all statutorily required forms of compensation in the regular rate of pay used to calculate plaintiff's overtime compensation. (*Id.* at ¶ 2.) Specifically, plaintiff alleges that defendant excluded cash paid to employees in lieu of health care benefits ("CIL compensation") from the regular rate, thereby resulting in the systematic underpayment of overtime compensation and cash outs of compensatory time off ("CTO"). (*Id.* at ¶¶ 19–49.) Plaintiff also alleges that payments defendant made for the collective's medical benefits were not made pursuant to a "bona fide" plan within the meaning of 29 C.F.R. § 778.215. (*Id.* at ¶¶ 32–38.) Finally, Plaintiff alleges that defendant excluded payments in lieu of observing holidays ("HIL compensation") when calculating the regular rate of pay for a subgroup of plaintiffs employed by defendant as firefighters. (Doc. No. 80 at 5–6; Doc. No. 80-1 ("Mastagni Decl.") at ¶ 5.)

On June 22, 2017, the court conditionally certified a collective as comprising "all current or former employees of the City of Ceres who have worked statutory overtime and received cash payments in lieu of health care benefits or savings payments, between February 17, 2014 and the date of entry of [the] order, if they chose coverage through the City that does not utilize the full dollar allowance." (Doc. No. 29 at 4–5.) On October 20, 2017, the court conditionally certified another collective as "comprising all current or former employees of the City of Ceres who have worked statutory overtime and received healthcare contributions on their behalf towards the purchase of healthcare benefits within the same work period/work week between August 21, 2014 through December 31, 2016." (Doc. No. 48 at 5.) A total of twenty (20) current and former employees opted into the collective. (Doc. No. 80 at 6; Mastagni Decl. at ¶ 8.)

On October 16, 2018, the parties notified the court that they had conditionally settled the matter, subject to the approval of the City of Ceres' city council. (Doc. No. 75.) The parties were subsequently directed to file dispositional documents and the settlement agreement for court approval. (Doc. Nos. 76, 79.) On December 28, 2018, the parties submitted the pending motion for approval of the settlement agreement. (Doc. No. 80.)

**LEGAL STANDARD**

Settlement of collective action claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014*); see also Dashiell v. County of Riverside*, No. EDCV 15-00211 JGB (SPx), 2018 WL 3629915, at *3 (C.D. Cal. July 19, 2018). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because to do so would shield employers from the full cost of complying with the statute. *Id.*; *see also Dashiell*, 2018 WL 3629915, at *3 ("The reason for this requirement is to safeguard against an employee waiving his or her claims for wages, overtime compensation, or liquidated damages when there is no actual dispute between the parties.").

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent

differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply), *recommendations adopted*, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved in order to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

**DISCUSSION**

**A.      Bona Fide Disputes**

Under the decision in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), the payment of CIL compensation must be included in the calculation of the regular rate of pay for overtime payments under the FLSA. There appears to be no dispute here that defendant is liable for overtime payments under *Flores* based on defendant's exclusion of CIL compensation from

4

the calculation of the regular rate. (*See* Doc. No. 80 at 9.) However, following further investigation, plaintiff now alleges an additional violation, in which defendant "excluded payments in lieu of observing holidays . . . to Plaintiffs employed as Firefighters." (*Id.* at 6.) This arrangement, which the parties refer to as "HIL compensation," was not addressed by the Ninth Circuit in *Flores*. Moreover, while district courts in this circuit have weighed in as to whether employers are liable under the FLSA for excluding cash paid to employees in lieu of observing holidays from the regular rate of compensation, the Ninth Circuit has not yet done so. *See Lewis v. County of Colusa*, No. 2:16-CV-01745-VC, 2018 WL 1605754, at *2 (E.D. Cal. Apr. 3, 2018) ("Whether 29 U.S.C. § 207(e)(2) applies to exempt the holiday in-lieu payments is a closer question, but the County does not show that its holiday payment scheme for safety officers and dispatchers falls squarely under this exemption either."); *Hart v. City of Alameda*, No. C-07-5845MMC, 2009 WL 1705612, at *3 (N.D. Cal. June 17, 2009) ("[T]he Court is not persuaded that any of the Additional Compensation payments constitutes a payment made 'due to' a holiday."). Here, the parties disagree about whether the HIL compensation claim is meritorious. (Doc. No. 80 at 9.) Given the unsettled state of the law in this area, the court finds there to be a bona fide dispute as to this issue.

The parties also have numerous disagreements regarding the measure of liability. First, the parties disagree over the methodology to be used in calculating the "regular rate" of pay. (Doc. No. 80 at 9–10.) This dispute stems from a disagreement as to whether damages should be calculated based on a method for salaried non-exempt employees, or instead based on a method for hourly non-exempt employees. (*See id.* at 10.) According to the parties' pending joint motion, if defendant is correct that damages should be calculated based on a method for hourly employees, damages would be reduced by over 66%. (*Id.*) Second, the parties suggest that, due to the arguable uncertainty in the law prior to the Ninth Circuit's decision in *Flores*, it is disputed here whether defendant failed to act in good faith when it omitted CIL compensation and, in some cases, healthcare contributions in its calculation of overtime compensation, which would subject defendant to liquidated damages. *See* 29 U.S.C. §§ 216(b), 260. *But see Kerzich v. County of Tuolumne*, 335 F. Supp.3d 1179, 1191 (E.D. Cal. 2018) ("The argument that the law was not

5

sufficiently settled prior to the decision in *Flores* is not sufficient to entirely exclude the possibility of recovering liquidated damages, since such damages were awarded in *Flores* itself.") According to the parties' pending motion, if defendant is correct that its failure to include CIL compensation or healthcare contributions in the regular rate was done in good faith, damages would be reduced by 50%. (Doc. No. 80 at 10–11.) Third, the parties suggest that the applicable statute of limitations is also disputed. In this regard, under the FLSA the statute of limitations is two years, which may be extended to three years if the violation is found to be willful. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 135 (1988). The parties report that it is disputed whether the FLSA violation at issue in this case was willful. All of these allegedly disputed issues could impact the extent of defendant's FLSA liability in this case.

      The court need not determine whether these latter three issues pose a bona fide dispute in this case. First, the court has already determined that the issue of whether HIL compensation must be included in the regular rate when calculating overtime pay constitutes a bona fide dispute. Second, the parties agree that the proposed settlement amount represents one hundred percent of what plaintiffs would expect to recover if this case were litigated to judgment. (Doc. No. 80 at 12.) Here, the settlement represents an agreed-upon amount for all overtime compensation allegedly owed to plaintiffs, plus an equal amount of liquidated damages, using the longer three-year statute of limitations. (*Id.*) Essentially, defendant is agreeing not to contest issues of willfulness and bad faith for the purpose of settling this matter, while still claiming that these issues would result in a reduced recovery for plaintiffs if this case proceeded to trial. (*See id.* at 13–14.) As noted, because defendant is not contesting liability at this stage of the proceedings, it could be suggested that no bona fide dispute exists here. Nonetheless, that fact alone does not compel rejection of the settlement because the value of plaintiffs' claims has not been discounted as part of the settlement. *See McManus v. City of Ceres*, No. 1:17-cv-00355-DAD-BAM, 2018 WL 4262126, at *3 (E.D. Cal. Sept. 6, 2018). To the contrary, under this settlement each plaintiff in this case will be receiving "the same relief they would be entitled to if they were to prevail on every disputed issue." (Doc. No. 80 at 12.) Approval of the parties'

/////

6

proposed settlement agreement thus would not thwart the purposes of the FLSA. The court therefore proceeds to consider the fairness and reasonableness of the proposed settlement.

**B.     The Proposed Settlement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224 at *3; *Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017). The court addresses each of these factors below.

1.     <u>Plaintiffs' Range of Possible Recovery</u>

Under the terms of the settlement agreement, defendant will pay plaintiffs a total sum of $109,878.96, which represents the maximum value of the claims if plaintiff and the putative class members were to prevail on every disputed issue. (Doc. No. 80 at 12.) To determine this amount, plaintiffs' counsel identified the amount each plaintiff's regular rate was undercalculated then, using the methodology outlined in 29 C.F.R. § 778.113, determined the resulting underpayment over the previous three years. (Mastagni Decl. at ¶ 15.) These numbers appear to be based on an analysis of defendant's time and payroll records produced during informal discovery. (*Id.* at ¶¶ 9, 11.) Counsel applied any applicable credits and offsets for payment of non-FLSA overtime. (*Id.* at ¶ 15.) The resulting amount for each plaintiff was then doubled to account for liquidated damages. (*Id.*) The damages breakdown by plaintiff is illustrated in the settlement agreement. (*See* Doc. No. 80-4 at 2–3.)

The parties assert that the settlement amount represents the maximum amount that plaintiffs could expect to recover if the cases were litigated to judgment—calculated based on the

7

extended three-year statute of limitations and including liquidated damages.  (Doc. No. 80 at 12.)  Consideration of the factor relating to the range of possible recovery weighs, in this case, heavily in favor of approval of the FLSA settlement.

### 2. The Stage of the Proceedings and the Amount of Discovery Completed

The court is also required to evaluate the stage of the proceedings and the amount of discovery completed to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014).  This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement.  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have sufficient information to make an informed decision regarding settlement.  The Ninth Circuit's decision in *Flores* makes it likely that plaintiffs would prevail with respect to some aspect of their claim.  The parties have engaged in informal discovery over a period of months, which included an exchange of time and payroll data to evaluate the potential range of recovery.  (Mastagni Decl. at ¶ 9; Doc. No. 80 at 12–13.)  Plaintiffs' counsel then analyzed these records and calculated damages.  (Mastagni Decl. at ¶ 15.)  Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate settlement.

### 3. The Seriousness of the Litigation Risks Faced by the Parties

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the class or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015).  Here, plaintiff Quiroz believes his claims are meritorious but concedes that, if this case were to proceed to trial, the he and the collective would face uncertainties about how to calculate damages due to the disputes between the parties.  (Doc. No. 80 at 13–14.)  In that event, the collective might not ultimately receive the amount they will receive under the settlement agreement, which provides them with complete relief under the FLSA.  The court finds it likely that further prolonging this litigation would generate needless litigation expenses for both sides, and that both plaintiff and defendant will likely benefit

/////

8

financially by settling this action now. Accordingly, consideration of this factor also weighs in favor of approval of the parties' FLSA settlement.

### 4. The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224 at *5. Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are therefore hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the release provision includes:

> all claims and possible claims against Defendant, known or unknown, foreseen or unforeseen, arising out of the matters raised in the Action or related thereto as of and including the Effective Date of this Agreement, including all claims made in this lawsuit for unpaid overtime, liquidated damages, and attorneys' fees, and Plaintiffs hereby fully, finally, and completely release, waive and discharge Defendant, and its officers, agents, employees, successors and assigns from any further claims under the FLSA for any alleged FLSA violation that occurred up to and including the Effective Date of this Agreement. The parties understand that this Release extends to all grievances, disputes, or claims of every nature and kind, known or unknown, suspected or unsuspected, arising from or attributable to Plaintiff's claims that Defendant violated the FLSA up to and including the Effective Date of this Agreement. The parties understand that this release does not include claims relating to conduct or activity which does not arise from or is not attributable to Plaintiff's FLSA claims or to any conduct or activity which occurs after Effective Date of this Agreement.

(Doc. No. 80-4 at 4.)  The parties explain that the provision releasing all FLSA claims whether or not they are related to the matters raised in this case is necessary here in order to account for the potential claims related to HIL compensation.  (Doc. No. 80 at 14) ("The parties share an understanding that such language was necessary given that the HIL claims were not specifically pled in the Complaint.").  Thus, the scope of the waiver and release provisions in the proposed settlement agreement appropriately track the breadth of plaintiffs' FLSA claims.  Moreover, there was widespread acceptance of the terms of the release, as indicated by the putative class members' approvals of the settlement.  (Doc. No. 80-4 at 7–26.)  Consideration of this factor therefore also weighs in favor of approval of the FLSA settlement.

> 5. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11–cv–05188–WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014).  Here, plaintiffs' counsel, attorney David Mastagni, has considerable experience in litigating and settling cases asserting liability under the FLSA and has represented to the court that this settlement is fair, adequate, and in the best interests of the class members.  (Mastagni Decl. at ¶¶ 2, 14, 17.)  In addition, all plaintiffs had an opportunity to review the terms of the settlement agreement, and all have accepted its terms.  (Doc. No. 80-4 at 7–26.)  Accordingly, consideration of this factor weighs in favor of approval of the FLSA settlement.

> 6. The Possibility of Fraud or Collusion

The court finds that in this case there is a low probability of fraud or collusion because the parties used payroll record data to calculate back overtime pay and liquidated damages and provided all plaintiffs the opportunity to review their settlement amounts.  Moreover, the settlement negotiations were conducted at arms-length (Doc. No. 80 at 15; Mastagni Decl. at ¶ 9), and there is nothing in the record in any way suggesting that plaintiffs' counsel "allowed the pursuit of their own self-interests . . . to infect the negotiation."  *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).  Moreover, the requested award for attorneys' fees and

costs does not detract from plaintiffs' recovery, since each plaintiff will receive the full amount of what they are allegedly due. As such, this settlement lacks any evidence of more "subtle signs" of collusion, such as, for example, when counsel receive a disproportionate distribution of the settlement, or when the plaintiff collective receives no monetary distribution but counsel are "amply rewarded." *Id.* at 947 (internal quotation marks and citation omitted).

Upon considering the totality of the circumstances, as reviewed above, the court finds that the proposed settlement is fair and reasonable.

**C.     Attorneys' Fees and Costs**

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar

11

calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD–Rental*, 779 F.3d at 955.

According to the terms of this settlement, plaintiffs' counsel will be paid $40,121.04 in attorneys' fees and plaintiffs will receive $109,878.96, for a total recovery of $150,000. (Doc. No. 80 at 16.) The attorneys' fees and costs represent roughly twenty-seven percent of the settlement amount, which is slightly above the benchmark, but also below comparable awards in other similar cases. *See Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD-SKO, 2018 WL 1305713, at *6 (E.D. Cal. Mar. 13, 2018) (approving attorneys' fees and costs award of $43,414.92, which represented thirty percent of the total settlement amount); *Goodwin v. Winn Mgmt. Grp.*, No. 1:15-cv-00606-DAD-EPG, 2018 WL 1036406, at *7 (E.D. Cal. Feb. 23, 2018) (approving attorneys' fees of $75,000 in a settlement of a class action and FLSA collective action, which was thirty percent of the total settlement amount); *Slezak*, 2017 WL 2688224, at *3 (approving attorneys' fees and costs award of $52,069 in a settlement of a FLSA collective action, which was thirty-one percent of the total settlement amount). *But see Selk*, 159 F. Supp. 3d at 1180 (approving attorneys' fees and costs award of $22,000 in a settlement of a FLSA collective action, which was forty-four percent of the total settlement amount). The court turns to the lodestar amount to cross-check whether a twenty-seven percent award of attorneys' fees is appropriate here. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). The court typically applies a lodestar multiplier after multiplying a reasonable hourly rate by the number of hours worked. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve
/////

percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts").

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD–BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with twenty-one years of experience); *Gong–Chun v. Aetna Inc.*, No. 1:09–cv–01995–SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 839–40 (E.D. Cal. 2016) (approving rates of $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14–cv–00964–MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years of experience); *Rosales v. El Rancho Farms*, No. 1:09–cv–00707–AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616–AWI–SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

Since these rates are only for the purposes of generally cross-checking the reasonableness of an award of twenty-seven percent of the common fund as attorneys' fees, the court finds that the rates requested by plaintiffs' counsel in prior cases before this court are sufficient for this

13

purpose and will employ those rates in calculating the lodestar. *See Emmons*, 2017 WL 749018, at *8. The parties' motion states that after applying the hourly rates previously approved by the court in *Emmons*, fees in this case would range from $96,114.00 on the low end to $148,926.50 on the high end for the two primary attorneys assigned to this litigation. (Doc. No. 80 at 17.) Those numbers would increase further when accounting for the hours expended by plaintiffs' counsel's paralegals and a forensic accountant. (*Id.*) Those amounts far exceed the award of $40,121.04 in attorneys' fees and costs sought by counsel here. The court therefore also approves the award of $40,121.04 in attorneys' fees and costs.

## CONCLUSION

For the forgoing reasons:

1. The parties' settlement agreement including the award of attorneys' fees and costs, which is incorporated herein by reference, is approved as fair, reasonable, and just in all respects, and the parties shall perform the settlement agreement in accordance with its terms;
2. The court expressly retains jurisdiction over this action for purposes of enforcing the parties' settlement agreement;
3. This action is hereby dismissed with prejudice; and
4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **February 28, 2019**

UNITED STATES DISTRICT JUDGE